[No. 17168. Department One. October 7, 1922.]

H. W. McCREERY, *doing business as McCreery Machinery Company, Respondent*, v. JOHN GRAHAM *et al., Appellants.*[1]

COMPROMISE AND SETTLEMENT (7, 9)—ENFORCEMENT—PERFORMANCE OF CONTRACT—EVIDENCE—SUFFICIENCY. The evidence sustains findings supporting a compromise and settlement and liability thereon for $6,000, where plaintiff sold marine engines for $12,000 which were defectively installed and resulted in counterclaims in favor of defendants who admitted making an agreement to pay $6,000 in full, if the plaintiff at its own expense, would repair and install the engines to the satisfaction of the purchasers, which was agreed to by all and confirmed by letters to the purchasers, who testified that such installations were made to their satisfaction.

PARTNERSHIP (55) — ASSUMED NAME — STATUTORY PROVISIONS — RIGHT TO SUE. Where defendant McCreery was the only person interested in the business carried on under the name of McCreery Machinery Company, he was not doing business under an assumed name, within Rem. Comp. Stat., § 9976, requiring a certificate of membership names to be filed with the county clerk.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 30, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Bronson, Robinson & Jones,* for appellants.

*Byers & Byers,* for respondent.

MITCHELL, J.—It appears that John Graham, a married man, in the construction and equipment of an ocean going vessel to be operated by the Westward Navigation Company, a corporation (all the stock of which was owned by Graham and wife), entered into a contract with H. W. McCreery, doing business as McCreery Machinery Company, by which the latter named

[1]Reported in 209 Pac. 692.

company was to furnish and install in the vessel two marine engines, in consideration of a price agreed upon. The engines were installed and part of the consideration therefor was paid. The use of the vessel was not satisfactory, attributable, as the owners claimed, to the condition and quality of the engines. It appears, also, that certain patrons of the vessel had libeled or threatened to libel her because of losses alleged to have been sustained by them on account of her failure to give proper service. The amount of such claims, however, is not made clear by the evidence. A controversy over the situation arose between the purchaser and the seller of the engines, added to which there was some dispute as to the balance due on the purchase price of the engines, admitted, however, to be about $12,000. After conferences between them, Graham wrote a letter to a representative of the machinery company wherein reference was made to having failed to reach an agreement regarding the terms under which the engines would be made satisfactory; that ''knowing your personal aversion to law suits and being myself equally averse, it occurred to me that, if we were both willing to make some sacrifice, we might arrive at a settlement''; that, in attempting to sell the vessel, only one party had agreed to take the engines with her, and then at such a loss it was thought the machinery company should bear one-half of it; and concluded the letter by saying:

''After a discussion you refused this proposition but thought it would be reasonable to settle the claim of approximately $12,000 which you make against me on a basis of 50%. I therefore now make the McCreery Machinery Co. through you, this offer:

''Provided the McCreery Machinery Co. put the engines in working order at their own expense, I will pay them $6,000 in full settlement of all their claims against

me or the Westward Navigation Co. and withdraw all claims by me or the Westward Navigation Co. against them. Owing to the nature of the circumstances with which you are familiar, this offer can only remain open until five o'clock this evening and will then be withdrawn, in which event the engines will be taken out of the boat and the liabilities of either party will have to be settled by the court.''

The proposition was promptly accepted, within the time specified, by a written answer of the machinery company, which agreed to put the engines in working order at its expense, concluding the letter as follows:

''It is understood between us that you will pay to the undersigned $6,000 in full settlement of all claims that the undersigned has against you or against the Westward Navigation Company. It is further understood that you shall withdraw all claims held by you or by the Westward Navigation Company against the undersigned.''

The engines were then delivered to the machinery company, who expended considerable time and material in repairing them to the satisfaction of the parties who had purchased the vessel with her engines after it was arranged with all three of the parties that the machinery company would make the repairs. Thereafter the $6,000 not having been paid, this suit was brought by the machinery company against Graham and wife. The defense was a general denial of material allegations, although the compromise agreement alleged in the complaint was admitted; an affirmative defense that the engines had never been put in running order; and that the machinery company was a fictitious name, the members of which had never filed a certificate in the office of the county clerk declaring it to be such and disclosing their true names, and hence not entitled to maintain an action. The answer further contained a

cross-complaint seeking damages in a large sum against the machinery company because of the libel suits already commenced or threatened against Graham and the Westward Navigation Company. This cross-complaint will receive no further notice herein because it is fully overcome by the compromise agreement, if carried out by the machinery company, which we find was the case. The reply of the plaintiff denied the allegations with reference to the trade-name of the plaintiff. Upon the trial of the case without a jury, the findings and judgment were for the plaintiff in the full sum sued for. The defendants have appealed.

Other than the trade-name, to be discussed later, all of the assignments of error are discussed in a general way by the appellants, in support of the contention that appellants are still interested in having the engines put in working order, as if the engines were still in the use of appellants or their navigation company. The trial court found upon an abundance and a preponderance of the evidence that the engines were put in working order.

The compromise agreement was made on January 18, 1917. The appellants sold the vessel and her engines, which were to be repaired and put in working order by the respondent, on January 22, 1917. The representatives of the purchaser of the vessel and her engines testified, one of them as follows:

"A. We negotiated for the vessel for quite a period, both with and without the engines, and when we ultimately decided to make the purchase it was agreed by Mr. Graham that Mr. McCreery was to put those engines in first class physical condition, and I don't know whether that was stipulated in the sale or not but it was an agreement we had at the time we took over physical possession of the ship. Q. Did Mr. McCreery

do that, and place them in first class physical condition to your satisfaction? A. Yes."

The other representative of the purchaser testified as follows:

"Q. Did you have any talk with Mr. Graham about it? A. Yes, I was present when this conversation took place. And then I called up Mr. McCreery about the thing. I don't remember whether I called him personally or not, but I remember talking to the boys about it. I said 'We should have that in writing and so you had better have McCreery confirm it with a letter to us, that he is going to put these engines in first class condition without any cost to us.' "

The testimony further shows that, under date of January 18, 1917, the McCreery Machinery Company, by its letter to the purchaser from the appellant, did confirm the arrangement and agreed to repair the engines and put them in running order. The testimony further shows that, after completing this arrangement by which respondent was to repair the engines to the satisfaction of the buyer from the appellants, the vessel with the engines were sold for more than $6,000 above the price appellant had offered to take for the boat without the engines. Under these facts, it must be held that the respondent was entitled to recover the $6,000 mentioned in the compromise agreement.

As to the name under which the respondent transacted business, it appears satisfactorily that H. W. McCreery was the only person interested in the business carried on in the name of the McCreery Machinery Company. This, we think, was not an assumed name within the contemplation of § 9976, Rem. Compiled Statutes, requiring a certificate of membership names to be filed with the county clerk. The situation is similar to that in the case of *Patterson v. Byers,* 17 Okl.

633, 89 Pac. 1114, wherein the court considered the firm name of "Patterson Furniture Company," under which two persons surnamed Patterson were doing business. It was therein said:

"The question for us to determine is. Does the title 'Patterson Furniture Company' come within the definition of said section, of fictitious names, or a designation not showing the names of the persons interested as partners. These provisions of our statute were adopted from the California statute. . ."

Further, the court quoted with approval the syllabus in the case of *Pendleton v. Cline,* 85 Cal. 142, 24 Pac. 659, towit:

"A firm name, showing the surname only of the partners is not a 'fictitious name' nor a 'designation not showing the names of the partners' within Civ. Code Cal. Sec. 2466, requiring every firm doing business under such name or designation to file and publish a certificate showing the full names and residences of its members,"

and concluded that the partners, surnamed Patterson, doing business as Patterson Furniture Company, were not within the terms of the statute and were not required to file and publish the certificate therein referred to.

The doctrine of the case of *Pendleton v. Cline, supra,* was later affirmed by the supreme court of California, sitting *En Banc,* in *McLean v. Crow,* 88 Cal. 644, 26 Pac. 596. Other cases to the same effect are *Guiterman v. Wishon,* 21 Mont. 458, 54 Pac. 566; *Zimmerman v. Erhard,* 83 N. Y. 74. These judicial constructions of statutes similar to our statute were made prior to 1907, the date our statute was enacted, and certainly, if two persons using only their surnames in connection with the name under which they do business do not come within the provisions of the statute, H. W. McCreery

does not while doing business in the name of McCreery Machinery Company.

Finding no error, the judgment is affirmed.

PARKER, C. J., BRIDGES, and TOLMAN, JJ., concur.